DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a Highland County Common Pleas Court judgment of conviction and sentence. A jury found David Jones, defendant below and appellant herein, guilty of aggravated arson in violation of R.C. 2909.02(A)(2), and three counts of murder in violation of R.C.2903.02(B).
 {¶ 2} Appellant assigns the following errors for review:
First assignment of error: "the trial court erred by overruling defendant's motion to suppress because, under the totality of the circumstances, david jones was easily coerced and his confession was clearly the result of overreaching and coercion on the part of law enforcement officers."
Second assignment of error: "the jury verdicts finding david jones guilty of one count of aggravated arson in violation of orc §2909.02(a)(2), and three counts of murder in violation of ORC § 2903.02(B) were against the manifest weight of the evidence."
Third assignment of error:
"The evidence presented to the jury was insufficient as a matter of law to support david jones' convictions on one count of aggravated arson in violation of ORC § 2909.02 and three counts of felony murder in violation of orc § 2903.02[.]"
Fourth assignment of error:
"The trial court erred in permitting a transcript of david jones' videotaped confession to be admitted into evidence and to be taken into the jury room[.]"
 {¶ 3} In the early hours of March 4, 2002, a fire started at 301 Main Street in Hillsboro.[1] While extinguishing the blaze, emergency personnel found the bodies of three victims: Adeline E. Davis, Devin D. Butler and Donald E. Butler.
 {¶ 4} An investigation revealed that someone purposely started the fire. Suspicion quickly settled on the appellant who had been drinking with the victims in their home a few hours earlier and who also appeared at the scene soon after emergency personnel arrived.
 {¶ 5} On March 11, 2002, several Hillsboro police officers interviewed the appellant. During the interview, the appellant confessed to starting the fire. He also later admitted to his ex-wife that he set the fire.
 {¶ 6} The Highland County Grand Jury returned an indictment on May 7, 2002 charging the appellant with three counts of murder in violation of R.C. 2903.02(B), three counts of aggravated arson in violation of R.C.2909.02(A)(1), and one count of aggravated arson in violation of R.C.2909.02(A)(2). He pled not guilty and not guilty by reason of insanity to the charges.
 {¶ 7} On October 10, 2003, the appellant filed a motion to suppress his confession because, he argued, his statements were involuntary. Appellant testified that he had been drinking since 5 PM the previous evening, had consumed at least a case of beer and was still very intoxicated when he spoke to police the next morning. Ron Priest and Jeff Murphy of the Hillsboro Police Department also recounted the events of the interview and stated that they saw no indication during the interview that the appellant was under the influence of alcohol. After hearing the evidence and watching a videotaped recording of the interview, the trial court denied the appellant's motion. The court found no discernible "staggering, unsteadiness or slurred speech" evident in the videotape and, thus, no "evidence of intoxication" during the interview. The court also found no indication of any "threats, coercion, duress or intimidation" by the two officers on the videotape.
 {¶ 8} At the appellant's November 2003 trial the jury could not reach a unanimous verdict and the court declared a mistrial. A second trial commenced on February 2, 2004. At trial the prosecution introduced the appellant's confession into evidence. Also, the appellant's ex-wife, Patricia Jones, testified that he admitted that he set the fire. Stephen Gallagher, Chillicothe Fire Department Assistant Fire Chief and canine handler, testified that he brought his trained canine "Winchester" to 301 Main Street after the fire and the dog gave "positive hits" — a response indicating that the dog detected traces of an accelerant in the apartment.[2] James Lyle, Hillsboro Fire Department Captain, testified that the burn patterns led him to conclude that the fire was not accidental. Lyle stated that the fire appeared to be an accelerant fire and the burn patterns were "indicative of something having been poured or applied to the stairwell" which appears to be where the fire originated. Robert Dunn, State Fire Marshall's Office investigator, also testified that the damage pattern in the stairwell was consistent with some "ignitable fluid." The witness ruled out various other possible sources for the fire and finally opined that "this was an intentional incendiary fire" which originated in the stairwell of the building. Finally, Dr. Christa Rajendram, also with the State Fire Marshall's Office, testified that she had performed chemical tests on the appellant's boots and found traces of lighter fluid.[3] She did not find lighter fluid on the appellant's jacket or gloves or any other clothing from that evening. Dr. Rajendram also could not find any "ignitable fluid" on the samples of the stairwell that she had been given to examine.
 {¶ 9} After hearing the evidence, the jury found the appellant guilty on the three murder counts and one of the arson counts. The jury acquitted the appellant of the three other arson counts. On April 1, 2004, the trial court sentenced him to fifteen years to life on each of the murder convictions and eight years on the arson conviction with the four sentences to be served consecutively to one another. This appeal followed.
 I {¶ 10} Appellant asserts in his first assignment of error that the trial court erred by not suppressing his confession. We disagree.
 {¶ 11} Our analysis begins from the fundamental premise that appellate review of a trial court's decision on a motion to suppress evidence involves a mixed question of law and fact. State v. Long (1998),127 Ohio App.3d 328, 332, 713 N.E.2d 1; State v. McDonald, Washington App. No. 04CA7, 2004-Ohio-5395, at ¶ 15. In determining a motion to suppress evidence, a trial court assumes the role of trier of fact and is in the best position to resolve factual disputes and to evaluate witness credibility. State v. Brooks (1996), 75 Ohio St.3d 148, 154,661 N.E.2d 1030; State v. Mills (1992), 62 Ohio St.3d 357, 366,582 N.E.2d 972; State v. Clay (1972), 34 Ohio St.2d 250, 298 N.E.2d 137. Appellate courts are bound to accept the trial court's factual findings so long as they are supported by competent and credible evidence. State v.Metcalf (1996), 111 Ohio App.3d 142, 145, 675 N.E.2d 1268; State v.Harris (1994), 98 Ohio App.3d 543, 546, 649 N.E.2d 7. Appellate courts must, however, review the trial court's application of the law to those facts de novo. State v. Williams (1993), 86 Ohio App.3d 37, 41,619 N.E.2d 1141.
 {¶ 12} Appellant argued below, and argues here on appeal, that his confession was involuntary. The Fifth Amendment to the United States Constitution guarantees that no person will be compelled to be a witness against himself. This safeguard is applicable to the states through theFourteenth Amendment's Due Process clause, see Carter v. Kentucky
(1981), 450 U.S. 288, 305, 101 S.Ct. 1112, 67 L.Ed.2d 241; Malloy v.Hogan (1964), 378 U.S. 1, 8, 84 S.Ct. 1489, 12 L.Ed.2d 653, and similar protections are afforded Ohio citizens under Section 10, Article I of the Ohio Constitution. State v. Simmons (Aug. 25, 1992), Pike App. No. 473, unreported.
 {¶ 13} A confession that is the byproduct of "coercive police activity" is involuntary and, thus, violative of both the United States and the Ohio Constitutions. See Colorado v. Connelly (1986), 479 U.S. 157,167, 107 S.Ct. 515, 93 L.Ed.2d 473; also see State v. Loza (1994),71 Ohio St.3d 61, 66, 641 N.E.2d 1082. Courts must apply a "totality of the circumstances" approach in determining whether a confession is voluntary. See State v. Broom (1988), 40 Ohio St.3d 277, 286,533 N.E.2d 682; State v. DePew (1988), 38 Ohio St.3d 275, 277,528 N.E.2d 542; State v. Maurer (1984), 15 Ohio St.3d 239, 257,473 N.E.2d 768. Factors to consider when reviewing the totality of the circumstances include (1) the age, mentality and prior criminal experience of the accused; (2) the length, intensity and frequency of the interrogation; (3) the existence of physical deprivation or mistreatment, and (4) the existence of threat or inducement. See Statev. Slagle (1992), 65 Ohio St.3d 597, 600, 605 N.E.2d 916; State v.Brewer (1989), 48 Ohio St.3d 50, 57, 549 N.E.2d 491.
 {¶ 14} Appellant's sole argument before the trial court was that his confession should be deemed involuntary because he was intoxicated. He testified during the suppression hearing that he had consumed a case of beer the previous night and was, in essence, awaken from a drunken stupor to be taken to the police station for an interrogation. His testimony was contradicted, however, by Officers Priest and Murphy who related that they saw no indicia of intoxication whatsoever. The trial court obviously found their testimony more credible and this is well within its province as "trier of fact." See e.g. State v. Brown, 100 Ohio St.3d 51,2003-Ohio-5059, 796 N.E.2d 506, at ¶¶ 13-14 (trial court permissibly found police officer's testimony that defendant was not intoxicated during interview to be more credible).
 {¶ 15} The trial court also examined the videotape of the confession and found nothing to support the appellant's intoxication claim. We have also examined the same tape and have come to the same conclusion. Although the appellant's voice is very low and, at times, almost inaudible, we see no indication that he was intoxicated. His speech (to the extent it is audible) is not slurred, he had no problem reading his waiver of rights form and he exhibited no other factors to indicate inebriation. It is clear that the appellant is upset during the course of the interrogation, but we see nothing to indicate that he was intoxicated. Thus, we find no error in the trial court's conclusion that the appellant's confession is voluntary.
 {¶ 16} In his appellate brief, the appellant raises an additional argument and cites to psychological evaluations made at the outset of the case to determine his competency to stand trial. These evaluations demonstrated that the appellant had low levels of mental acuity. Bobbie Hopes, Forensic Psychologist, noted that the appellant had a "Verbal IQ score of 60" which put him in the "Mildly Mentally Retarded range of intellectual functioning."[4] David Malawista, an Evaluating Psychologist at the Shawnee Forensic Center, described the appellant as possessing "subaverage intellectual abilities."
 {¶ 17} Appellant cites these reports and argues that his low level of intellectual functioning, together with mental problems stemming from an abusive father and sexual dysfunction, combined in such a way as to make him inherently susceptible to the officer's suggestion that he set the fire and, thus, made the interrogation and confession inherently coercive. Although the appellant concedes that the officers employed no abusive tactics, he asserts that the totality of the circumstances make it clear that his confession was not the product of his own free will but, rather, simply repeating what the officers told him to say. We disagree with the appellant.
 {¶ 18} First, we note that the appellant did not raise this particular issue during the trial court proceedings. His sole argument in the original suppression motion concerned intoxication. It is well-settled that issues not raised in an original motion to suppress cannot be raised for the first time on appeal. See State v. Marks, Montgomery App. No. 19629, 2003-Ohio-4205, at ¶¶ 20-21; State v. Lamberson (Mar. 19, 2001), Madison App. No. CA2000-04-012; State v. Jordan (May 23, 1991), Scioto App. No. 90CA1876. This is no mere technicality. Had the prosecution known that the appellant's intellectual capacity could be an issue later in these proceedings it could have introduced its own evidence on this point. The prosecution could also have called the evaluating psychologists to testify as to their opinions on the voluntary nature of the confession. This issue was not fully developed during the trial court proceedings and we should not consider it for the first time on appeal.
 {¶ 19} Second, assuming that we did consider this issue for the first time on appeal we would find no merit in appellant's argument. Even if we accept as true the appellant's mental problems and low level of intellectual acuity, the record must still demonstrate some evidence of police coercion before the confession can be found involuntary. See Statev. Eley (1996), 77 Ohio St.3d 174, 178, 672 N.E.2d 640; State v. Hill
(1992), 64 Ohio St.3d 313, 318, 595 N.E.2d 884; also see Connelly, supra at 479 U.S. 157, 164. As we noted previously, we have reviewed the videotaped confession and find no evidence of coercion. Although their voices are more audible than the appellant's, Officers Priest and Murphy are nevertheless soft spoken. No threats, physical abuse, depravation of food or medical treatment or any other type of coercive police activity that the "voluntariness standard" was meant to address appear on the video tape. Indeed, courts would be hard pressed to come up with a standard for police to follow that is any less coercive than what appears on this particular videotape.
 {¶ 20} Appellant, however, cites a host of factors that he argues contributes to the involuntariness of his confession. First, he points to various instances in which police officers told him to "be a man" and to "come clean" about the fire. We do not find these comments particularly troubling because admonitions to tell the truth are not improper. Statev. Wiles (1991), 59 Ohio St.3d 71, 81, 571 N.E.2d 97; State v. Cooey
(1989), 46 Ohio St.3d 20, 28, 544 N.E.2d 895.
 {¶ 21} Appellant also contends that occasionally he answered a question in the affirmative, but shook his head "no." Although we did not observe this in our review of the tape, even if it did occur this does not establish police coercion. Appellant was visibly upset however throughout the interview. Any inconsistencies in head shaking and verbal response to questions may well have been the result of that agitation. Again, had this issue been raised below the prosecution could have offered evidence that might have explained the allegedly inconsistent responses.
 {¶ 22} Appellant also points to a portion of the tape in which he told Officer Murphy that he did not know what to write and that the officer told him to write that he was drinking. The implication is that the police dictated the confession rather than the appellant giving it voluntarily. We note, however, that the officer only told him to write down that he was drinking; the officer did not tell him to confess to the fire.[5] We also note that the tape reveals long intervals of silence when the appellant is writing. We do not accept the proposition that the police dictated this confession to the appellant.
 {¶ 23} Appellant also points to the portion of the interview (near the end of the tape) in which he devolves into "hysterics" and screams that he "didn't do it." This incident is visible on the videotape, but we do not accept the argument that it means that the confession was involuntary. First, it is not uncommon for those who give a confession to attempt to recant it, even a few moments later. This fact does not require a finding that a first confession is involuntary. Second, the appellant is obviously upset during the interview. He is crying and expressing fear about prison. He is also confused about what will happen to him and repeatedly states that he wants to go home. This fear and confusion may have prompted the appellant's exclamation. This is another area that could have been explored in greater detail had the issue been squarely raised in the trial court.
 {¶ 24} Again, we do not doubt that the appellant suffers from some degree of mental problems and a low level of mental acuity. Although these factors may have contributed to a police confession, they do not render the confession involuntary. The Fifth Amendment guards against government misconduct and coercive police activity; it does not guarantee special handling for those of lesser cognitive abilities or delicate sensibilities. After our review, we agree with the trial court's conclusion that no evidence of coercive conduct exists on the part of Officers Murphy or Priest during the interrogation. Thus, the trial court correctly determined that the appellant's confession was voluntary and need not be suppressed. Accordingly, based upon the foregoing reasons we hereby overrule the appellant's first assignment of error.
 II {¶ 25} We now turn, out of order, to the appellant's fourth assignment of error. Appellant contends that the trial court erred by admitting a transcript of the videotaped confession into evidence and then allowing the transcript to be taken into the jury room and used during deliberations. He contends that this violates the "best evidence" rule set out in Evid.R. 1002 and merits reversal of his conviction.[6] We disagree.
 {¶ 26} First, it is not entirely clear whether the appellant properly preserved this issue for appeal. When the trial court decided which exhibits to admit into evidence, the appellant's only expressed concern was that a portion of the transcript be redacted to reflect a part of the tape that was muted for the jury. It does not, however, appear that the appellant argued that admission of the transcript violated Evid.R. 1002. Thus, he has waived this issue. See State v. Bidinost (1994),71 Ohio St.3d 449, 452-453, 644 N.E.2d 318; State v. Carter (1992),64 Ohio St.3d 218, 227, 594 N.E.2d 595; State v. Coleman (1990),50 Ohio St.3d 206, 211, 553 N.E.2d 640.
 {¶ 27} Second, even if the issue had been preserved, we would find no merit in the argument. The Ohio Supreme Court held in State v. Waddy
(1992), 63 Ohio St.3d 424, 588 N.E.2d 819, that no error occurs when a court gives a transcript to the jury as a listening aid to a tape admitted into evidence when no "material differences" exist between the tape and transcript. In the instant case the appellant does not argue that "material differences" exist between the transcript and the videotape and we have found none in our own review.[7]
 {¶ 28} We recognize that the Waddy decision is somewhat distinguishable from the instant case because the transcript of the tape in Waddy was not admitted into evidence. Nevertheless, we believe that the same principles apply. The Waddy court gave the jury a transcript as a "listening aid." The same was done here. Although admitted as an exhibit, the trial court explained the use of that exhibit to the jury as follows:
"Regarding State's Exhibit Number 22, which is a transcript of the videotaped interview of the Defendant, I am instructing you that this transcript is not a complete transcript of that videotape. Further, this transcript is to be used by the jury as an aid in determining the content of the videotaped interview, if you so desire."
 {¶ 29} Thus, the trial court told the jury that the transcript was merely an aid in determining the content of the videotape. This is important because, as we stated previously, the audio portion of the videotape (particularly the appellant's view) is difficult to hear. We believe that it makes little difference whether a transcript is admitted as an exhibit (as it was here) or not (as in Waddy). The end result is the same and the jury may make use of the transcript as a "listening aid."
 {¶ 30} Appellant attempts to distinguish Waddy and this case on the basis that Waddy involved an audiotape while this case involved a videotape. He argues that the videotape demanded that the jury pay close attention to his and the officers' demeanor to gage his confession's credibility. Appellant posits that the "visual aspect" of the videotape "diminishes" the credibility of that confession. We are not persuaded.
 {¶ 31} First, if the medium used to record a suspect's confession is of such poor quality that a transcript is required as a listening aid, a transcript should be provided. Second, the gist of appellant's argument is that a jury will simply ignore a videotape and focus only on a transcript. We find nothing in the record, however, to suggest that this was the case. We note that the trial court instructed the jury that the videotape is the more complete copy of the interview and that the transcript was merely intended as a listening aid. Juries are presumed to follow the court's instructions. State v. Neptune (Apr. 21, 2000), Athens App. No. 99CA25; State v. Lamar (Aug. 13, 1998), Lawrence App. No. 95CA31; State v. Stewart (Dec. 15, 1997), Washington App. No. 96CA18.
 {¶ 32} In the final analysis, the decision to admit or to exclude evidence lies in the sound discretion of the trial court, State v. Bey
(1999), 85 Ohio St.3d 487, 490, 709 N.E.2d 484. Absent an abuse of that discretion, an appellate court will not reverse a trial court's judgment. See e.g. State v. Dunlap (1995), 73 Ohio St.3d 308, 316,652 N.E.2d 988; State v. Jells (1990), 53 Ohio St.3d 22, 30,559 N.E.2d 464; State v. Sage (1987), 31 Ohio St.3d 173, 510 N.E.2d 343, at paragraph two of the syllabus. We note that an abuse of discretion is more than an error of law or judgment; it implies that the trial court acted in an unreasonable, arbitrary, or unconscionable manner. State v.Xie (1992), 62 Ohio St.3d 521, 527, 584 N.E.2d 715; State v. Montgomery
(1991), 61 Ohio St.3d 410, 413. Further, when applying the abuse of discretion standard, a reviewing court must not merely substitute its judgment for that of the trial court. In re Jane Doe 1 (1991),57 Ohio St.3d 135, 138, 566 N.E.2d 1181; Berk v. Matthews (1990),53 Ohio St.3d 161, 169, 359 N.E.2d 1301. In the case sub judice, we find no abuse of discretion. As mentioned previously, the Ohio Supreme Court has permitted transcripts to be provided to a jury as a listening aid when no "material differences" exist between the tape and the transcript. The trial court also instructed the jury that the transcript was a listening aid. Finally, because of the poor audio quality of the videotaped interview, we believe that a transcript was particularly important for the jury to understand and to follow the encounter.
 {¶ 33} Accordingly, based upon the foregoing reasons we hereby overrule the appellant's fourth assignment of error.
 III {¶ 34} We now turn to the appellant's third assignment of error in which the appellant argues that insufficient evidence was adduced at trial to support his convictions. Again, we disagree.
 {¶ 35} When a defendant challenges the legal sufficiency of the evidence, a reviewing court must construe that evidence in a light most favorable to the prosecution. State v. Hill (1996), 75 Ohio St.3d 195, 205,661 N.E.2d 1068; State v. Grant (1993), 67 Ohio St.3d 465, 477,620 N.E.2d 50; State v. Rojas (1992), 64 Ohio St.3d 131, 139,592 N.E.2d 1376. The relevant inquiry is whether after viewing the evidence, could any reasonable trier of fact have found the essential elements of the crime beyond a reasonable doubt? State v. Fears (1999),86 Ohio St.3d 329, 341, 715 N.E.2d 136; State v. Clemons (1998),82 Ohio St.3d 438, 444, 696 N.E.2d 1009, 1016; State v. Jenks (1991),61 Ohio St.3d 259, 574 N.E.2d 492, at paragraph two of the syllabus. We conclude that the jury could so find in this case.
 {¶ 36} Appellant was convicted of (1) aggravated arson, in violation of R.C. 2909.02(A)(2), which provides that no person, by means of fire, shall cause physical harm to an occupied structure, and (2) murder, in violation of R.C. 2903.02(B), which provides that no person shall cause the death of another while committing a first/second degree felony (in this case, arson). The evidence adduced at trial (both photographic and testimonial) established that fire damaged the residence at 301 Main Street in Hillsboro and that three people died as a result of that fire. The issues at trial included (1) whether the fire was deliberately set and, (2) whether the appellant set the fire.
 {¶ 37} Firefighter Marc Bayless testified that the burn patterns in the building looked very unusual — as if a "poured substance" was burning. Assistant Fire Chief Gallagher related how the trained canine, Winchester, picked up positive hits for accelerant in the building. Robert Dunn, of the State Fire Marshall's office, also testified that this was an "intentional incendiary fire." This evidence provides a basis for any reasonable trier of fact to conclude that the fire was deliberately set. The remaining issue is who set the fire?
 {¶ 38} To that end, Dr. Rajendram, of the State Fire Marshall's Office, testified that she found traces of accelerant (lighter fluid) on both of the appellant's boots. Even more damaging is the testimony of the appellant's ex-wife that several months after the fact, he confessed the crime to her. The most damaging evidence, however, is the appellant's own confession of the crime to the police. Not only does he admit his involvement, but his affidavit (State's Exhibit 24) contains the admission that after one of the victims had gone to bed and the other two had "passed out," he poured lighter fluid on the carpet and the mattress, lit it and left the building. This evidence is sufficient for the jury to find that the appellant set the fire and, consequently, to find him guilty of both aggravated arson and murder.
 {¶ 39} Appellant counters that insufficient evidence exists to prove the requisite mens rea under R.C. 2909.02(B) (that he "knowingly" set the fire). "Knowingly" is defined in R.C. 2901.22(B): "A person acts knowingly, regardless of purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." Whether a person acts knowingly can only be determined, absent a defendant's admission, from all the surrounding facts and circumstances, including the doing of the act. State v. Huff
(2001), 145 Ohio App.3d 555, 563, 763 N.E.2d 695; State v. Brown,
Gallia App. No. 04CA3, 2004-Ohio-5887, at ¶ 10. A trier of fact must examine all of the evidence and arrive at a conclusion concerning a defendant's intent.
 {¶ 40} The evidence adduced in the case at bar reveals that the appellant poured lighter fluid, set the fire, left the building and then returned to help his friends. This evidence is sufficient for a reasonable trier of fact to conclude that the appellant knowingly set the fire and committed the crime.
 {¶ 41} Accordingly, based upon the foregoing reasons, we hereby overrule the appellant's third assignment of error.
 IV {¶ 42} Finally, we turn to the appellant's second assignment of error. Appellant asserts that his convictions are against the manifest weight of the evidence. We disagree.
 {¶ 43} When an appellate court reviews a claim that a verdict is against the manifest weight of evidence, the conviction cannot be reversed unless it is obvious that the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. See State v. Earle (1997),120 Ohio App.3d 457, 473, 698 N.E.2d 440; State v. Garrow (1995),103 Ohio App.3d 368, 370-371, 659 N.E.2d 814; State v. Davis (1988),49 Ohio App.3d 109, 113, 550 N.E.2d 966. After our review of the record in this case, we conclude that the trial court's judgment is not against the weight of the evidence.
 {¶ 44} Appellant's own confession, both to the police and to his ex-wife, establish that he started the fire. He spends considerable time, not only in this assignment of error but throughout his brief, challenging the credibility of that confession and further arguing that his ex-wife's testimony was "incredible." We point out, however, that the weight of the evidence and the credibility of witnesses are issues to be decided by the trier of fact. State v. Dye (1998), 82 Ohio St.3d 323, 329,695 N.E.2d 763; State v. Ballew (1996), 76 Ohio St.3d 244, 249,667 N.E.2d 369; State v. Williams (1995), 73 Ohio St.3d 153, 165,652 N.E.2d 721. A trier of fact is free to believe all, part or none of the testimony of each witness who appears before it. State v. Nichols
(1993), 85 Ohio App.3d 65, 76, 619 N.E.2d 80; State v. Caldwell
(1992), 79 Ohio App.3d 667, 679, 607 N.E.2d 1096; State v. Harriston
(1989), 63 Ohio App.3d 58, 63, 577 N.E.2d 1144. In the case sub judice, the jury obviously found the evidence to be credible.
 {¶ 45} We also note that no evidence existed of any alternative explanation for the fire. Robert Dunn describes his investigation of the building and testified that he ruled out other means by which the fire could have started (mostly electrical in origin). Other witnesses testified that the fire began by the use of an accelerant. After our review of the evidence, we do not believe that the jury created a manifest miscarriage of justice by finding that the appellant intentionally started the fire. Accordingly, based upon the foregoing reasons we hereby overrule the appellant's second assignment of error. Having reviewed all the errors assigned and argued in the briefs, and after finding merit in none of them, the judgment of the trial court is hereby affirmed.
Judgment Affirmed.
 JUDGMENT ENTRY
It is ordered that the judgment be affirmed and that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Highland County Common Pleas Court to carry this judgment into execution.
If a stay of execution of sentence and release upon bail has been previously granted, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of the proceedings in that court. The stay as herein continued will terminate at the expiration of the sixty day period.
The stay will also terminate if appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to the expiration of said sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Harsha, J. Kline, J.: Concur in Judgment Opinion.
[1] The record indicates that this premises is a multi-use building. Owner Paul Yinger operates his chiropractic business in the bottom half of the building and the top portion is rented as a residential apartment. As discussed infra in this opinion, the fire started in the upper part of the building.
[2] Winchester also gave a "positive hit" for the presence of an accelerant on some shoes, but it is unclear from the transcript whether those shoes belonged to the appellant.
[3] Dr. Rajendram also found traces of lighter fluid on some of the victims' clothing as well.
[4] Later in her report, Dr. Hopes opined that the appellant did not "meet the criteria for being termed mentally ill or mentally retarded . . ."
[5] We have not found this particular incident during our review of the videotape but will accept appellant's assertion that it occurred.
[6] Evid.R. 1002 states, in pertinent part, that to prove the content of a recording the original recording is required.
[7] Appellant does claim that certain "inconsistencies" exist between the transcript and the videotape, but does not elaborate on what those inconsistencies are. Even if some inconsistencies exist, however, this does not necessarily mean that those inconsistencies could be deemed to be "material differences."