[Cite as *In re M.W.*, 2018-Ohio-5227.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| IN THE MATTER OF:<br><br>M.W. | JUDGES:<br>Hon. John W. Wise, P. J.<br>Hon. W. Scott Gwin, J.<br>Hon. Patricia A. Delaney, J.<br><br>Case No. 2018 CA 0021<br><br><br>O P I N I O N |


| | |
|---|---|
| CHARACTER OF PROCEEDING: | Criminal Appeal from the Court of Common Pleas, Juvenile Division, Case No.  A2017-0751 |
| JUDGMENT: | Affirmed in Part; Reversed in Part and Remanded |
| DATE OF JUDGMENT ENTRY: | December 21, 2018 |


APPEARANCES:

| For Appellee | For Appellant |
|---|---|
| WILLIAM C. HAYES<br>PROSECUTING ATTORNEY<br>JEFFREY BOUCHER<br>ASSISTANT PROSECUTOR<br>20 South Second Street, Fourth Floor<br>Newark, Ohio  43055 | BRADLEY KOFFEL<br>1801 Watermark Drive<br>Suite 350<br>Columbus, Ohio  43215 |

*Wise, P. J.*

{¶1} Appellant M.W. appeals the decision of the Court of Common Pleas, Licking County, Juvenile Division, adjudicating him delinquent for, *inter alia*, pandering sexually-oriented matter involving a minor. Appellee is the State of Ohio. The relevant facts leading to this appeal are as follows.

{¶2} In early 2017, appellant, then age seventeen, briefly dated a fifteen-year-old female (hereinafter "female victim" or "F.V."). On one occasion during the time frame of February-March 2017, F.V. performed oral sex on appellant while at his house. Appellant recorded some of this conduct in video format on his iPhone. At some point afterward, while the two were still dating, appellant told F.V. that he had sent a "buddy" a video of the aforementioned oral sex act. *See* Tr. at 25-27 (adjudication testimony of F.V.).

{¶3} In October 2017, about seven months after appellant and F.V. broke up, two of appellant's male classmates, C.H. and C.P., got into an argument during a vocational class. One of these males, C.H., had also dated F.V. for a couple of months in the fall of 2017. Appellant intervened in the argument by indicating he had something on his phone which would make C.H. angry. After C.H. left the room, appellant showed a portion of a video on his phone to C.P. and a bystander classmate, L.W. This video portion included images of an erect penis and the face of F.V., albeit without showing physical contact.

{¶4} School officials then came into the class to investigate. Appellant thereupon gave the phone to another male juvenile, R.S., and asked him to delete certain recorded images. Appellant indicated there was a video of F.V. performing oral sex on appellant

and told him to delete it. R.S. instead left the phone on a bookshelf, and one of the school's administrators secured it.

**{¶5}** On October 20, 2017, appellant was arrested. In the meantime, the phone was provided to law enforcement officials.

**{¶6}** On October 23, 2017, a deputy from the Licking County Sheriff's Office filed a complaint in the juvenile division alleging that appellant was a delinquent child. The complaint listed the following counts:

**{¶7}** Count 1: Pandering sexually-oriented matter involving a minor, R.C. 2907.322(A)(1); Count 2: Disseminating matter harmful to a juvenile, R.C. 2907.31(A)(2); Count 3: Attempted tampering with evidence, R.C. 2921.12(A)(1) and R.C. 2923.02(A).

**{¶8}** The juvenile court conducted an initial hearing on October 23, 2017. Appellant remained in detention.

**{¶9}** On November 3, 2017, by agreement with the State of Ohio, the juvenile court released appellant to reside with his father, under house arrest.

**{¶10}** On January 8, 2018, the court conducted a Juv.R. 29 adjudicatory hearing. Via a judgment entry issued that day, appellant was adjudicated delinquent with respect to each of the above three counts.

**{¶11}** On March 5, 2018, the court conducted a dispositional hearing and entered a final judgment. Appellant was thereby committed to the Department of Youth Services ("DYS") for a minimum period of two years, as follows: twelve months on the pandering count, six months on the dissemination count, and six months on the tampering count, all consecutive to each other. The court also declared appellant a Tier II juvenile sex

offender, with requirements for registration for twenty years (R.C. 2950.07(B)(2)) and an in-person residence verification every 180 days (R.C. 2950.06(B)(2)).

{¶12} On March 14, 2018, appellant filed a notice of appeal. He herein raises the following seven Assignments of Error:

{¶13} "I. THE ADJUDICATION OF DELINQUENCY ON COUNT 1 IS NOT SUPPORTED BY SUFFICIENT EVIDENCE AND IS CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶14} "II. THE ADJUDICATION OF DELINQUENCY ON COUNT 2 IS NOT SUPPORTED BY SUFFICIENT EVIDENCE AND IS CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶15} "III. IF APPELLANT'S EXHIBITION OF THE VIDEO TO C.P. AND L.W. WAS 'HARMFUL TO JUVENILES' WITHIN THE MEANING OF R.C. 2907.31(A)(2), THEN THAT STATUTE IS UNCONSTITUTIONALLY VAGUE AND IRRATIONAL AS APPLIED TO THE FACTS OF THIS CASE.

{¶16} "IV. DESPITE EVID.R. 1002, THE JUVENILE COURT ALLOWED INTO EVIDENCE AND RELIED UPON STATEMENTS DESCRIBING THE CONTENT OF THE VIDEO.

{¶17} "V. APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL BY HIS COUNSEL'S FAILURE TO OBJECT, BASED UPON EVID.R. 1002, TO THE STATEMENTS DESCRIBING THE CONTENT OF THE VIDEO.

{¶18} "VI. APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL IN THE AGGREGATE.

**{¶19}** "VII. THE DISPOSITIONAL ORDER CONSTITUTES AN ABUSE OF DISCRETION."

I.

**{¶20}** In his First Assignment of Error, Appellant M.W. maintains his Count 1 adjudication (based on the offense of pandering sexually-oriented matter involving a minor) was not supported by sufficient evidence and was against the manifest weight of the evidence. We disagree.

*Sufficiency of the Evidence*

**{¶21}** In reviewing a defendant's claim of insufficient evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus. The *Jenks* standard is also applied in appellate review of juvenile delinquency findings. *See In re Durham*, 10th Dist. Franklin No. 97APF12-1653, 1998 WL 635107, citing *In re Washington* (1998), 81 Ohio St.3d 337, 339, 691 N.E.2d 285. Furthermore, it is well-established that the State bears the burden of establishing each and every element of a charged crime and must do so with proof beyond a reasonable doubt. *See In re L.R.*, 8th Dist. Cuyahoga No. 93356, 2010–Ohio–15, ¶ 11.

**{¶22}** Appellant herein was adjudicated delinquent under Count 1 by reason of violating R.C. 2907.322(A)(1), which states: "No person, with knowledge of the character of the material or performance involved, shall *** [c]reate, record, photograph, film, develop, reproduce, or publish any material that shows a minor participating or engaging in sexual activity, masturbation, or bestiality[.]"

**{¶23}** Appellant specifically contends there is no "legally cognizable evidence" that the video appellant exhibited to C.P. and L.W. on October 20, 2017 shows "sexual activity." Appellant's Brief at 5.

**{¶24}** We note that pursuant to the Revised Code's definition section regarding sex offenses, "sexual activity" means sexual conduct or sexual contact, or both. R.C. 2907.01(C). "Sexual conduct" includes "*** anal intercourse, fellatio, and cunnilingus between persons regardless of sex ***." *See* R.C. 2907.01(A). "Sexual contact" means "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B).

**{¶25}** During the adjudication hearing, the State called *inter alia* five minor-aged witnesses: C.H., F.V., C.P., L.W., and R.S.[1]

**{¶26}** C.H. testified that he dated F.V. in the time frame of September and October 2017 (about seven months after appellant dated F.V.). *See* Tr. at 32. C.H. recalled that on October 20, 2017, he got into an argument at school with C.P., at which point appellant got involved and said he had something that would "piss off" C.H. Tr. at 35. Appellant had his phone out at the time, but C.H. didn't look at the screen. Tr. at 36. C.H. decided to walk away from the fracas and "just left it alone," until he was later approached by school personnel and law enforcement. *Id.*

**{¶27}** F.V. testified that appellant had told her "[s]omething along the lines saying I [appellant] just sent my buddy this video of you giving me head." Tr. at 27. She also

---

[1]  As appellant correctly notes, his statement at the dispositional phase to the effect that he had indeed recorded F.V. having oral sex with him (Disp. Tr. at 15) should not be considered evidence for adjudicatory purposes.

recalled that she and appellant had broken up in late March 2017, and that they had not engaged in any sexual activity after the break-up. Tr. at 25. In response to a question by the judge, F.V. noted that appellant made his statement about sending the video before they broke up. Tr. at 28-29. Appellant presently urges that F.V. did not explain the context of the statement, leaving unclear whether appellant was joking or sincere. Appellant further maintains the statement leaves open the question of whether that video showed sexual activity or instead showed something moments before or after any sexual activity.

**{¶28}** The record also reveals that C.P., who was shown the video in question for a couple of seconds until he looked away, testified that it showed portions of a male and a female, specifically described as "[appellant's] private parts and a girl that looked like [F.V.]." Tr. at 44. But C.P. could not "positively identify" these persons. Tr. at 49. He recalled that he saw no "movement" or female nudity in the video. Tr. at 52-53. Thus, he merely speculated that the female was F.V., also noting that the video had become a "hot topic." Tr. at 49, 54. But he summarized on re-direct examination what he had observed as "[i]t was more of her getting ready to suck [M.W.'s] erect penis." Tr. at 53.

**{¶29}** The other minor who looked at the video, L.W., was asked on direct to describe what he saw on the video, to which he replied: "Oral sex, I guess, is what --." Tr. at 60. L.W. then testified that he could tell the female was F.V. because he recognized her face. *Id.* He also saw an erect penis a "probably big distance" from the face. Tr. at 61. However, on cross-examination he stated that he had not seen any "movement" on the video clip, and someone had merely told him the video showed oral sex. Tr. at 66.

**{¶30}** The last of the five testifying minors was R.S. He recalled seeing an argument develop between C.H. and C.P. on October 20, 2017. Tr. at 71. He then

observed appellant getting his phone out and showing a couple of other boys "videos and pictures of [F.V.]" Tr. at 72.[2] R.S. then recalled that when school authorities entered the room, appellant "handed me his phone and told me to delete the pictures and videos off of his phone." *Id.* As appellant gave R.S. possession of the phone, he gave him a password, but R.S. was unable to remember it. Tr. at 73. He didn't want anything to do with the device, so he put it with some books in a bookcase. Tr. at 74. On redirect, R.S. was asked by the prosecutor: "And [M.W.] told you that it was [F.V.] performing oral sex on him on the phone [?]" R.S. answered in the affirmative. Tr. at 77.

**{¶31}** Despite the aforesaid testimony, appellant essentially contends that under the corpus delicti rule, the trial court's finding that the video shows "sexual activity" cannot be based upon only statements attributed to appellant. The Ohio Supreme Court has stated that the corpus delicti of an offense is "the body or substance of the crime ***." *State v. Cook*, 128 Ohio St.3d 120, 2010-Ohio-6305, 942 N.E.2d 357, ¶ 23 (additional citations omitted). It has long been established as a general rule in Ohio that there must be some evidence of a confession, tending to establish the corpus delicti, before such confession is admissible. The quantum or weight of such outside or extraneous evidence is not of itself to be equal to proof beyond a reasonable doubt, nor even enough to make it a prima facie case. *See State v. Maranda*, 94 Ohio St. 364, 114 N.E. 1038 (1916), at paragraph two of the syllabus.

**{¶32}** "In order to satisfy the corpus delicti [*sic*] rule, the prosecution must introduce evidence tending to prove the fact that a crime was committed, but that

---

[2] On cross-examination, R.S. conceded he never actually saw any images on the phone. *See* Tr. at 76.

evidence need not be direct; instead, circumstantial evidence may be relied upon to show corpus delicti." *State v. Gates*, 6th Dist. Sandusky No. S-17-045, 2018-Ohio-1875, ¶ 18, citing *Miranda* at 371, 114 N.E. 1038. Furthermore, "the burden upon the state to provide evidence of the corpus delecti [*sic*] is minimal." *Gates* at ¶ 18, citing *State v. Edwards*, 49 Ohio St.2d 31, 36, 358 N.E.2d 1051 (1976). Thus, only a modicum of evidence is necessary before a confession will be deemed admissible in the context of the corpus delicti rule. *State v. Smith*, 7th Dist. Jefferson No. 97 JE 25, 1999 WL 1243309. In addition, " '[c]onsidering the revolution in criminal law of the 1960's and the vast number of procedural safeguards protecting the due-process rights of criminal defendants, the corpus delicti rule is supported by few practical or social-policy considerations.'" *State v. Edinger*, 5th Dist. Stark No. 2000CA00144, 2000 WL 1886269, quoting *Edwards* at 35.

**{¶33}** Upon review, we find the aforecited testimony of C.P. and L.W. concerning their observations of appellant's video satisfied the minimal requirements of the corpus delicti rule under Ohio law, allowing the fact-finder to combine this evidence with appellant's admissions concerning the existence of recorded sexual activity presented via the testimony of F.V. and R.S. Accordingly, we hold that the delinquency adjudication in this instance based on the offense of pandering sexually-oriented matter involving a minor was supported by the sufficiency of the evidence.

<u>*Manifest Weight of the Evidence*</u>

**{¶34}** An appellate court applies the same manifest weight standard of review in a juvenile delinquency case that it applies in an adult criminal appeal. *See In re E.A.*, 9th Dist. Summit No. 28106, 2016-Ohio-7281, ¶ 11 (additional citation omitted). Accordingly, in regard to appellant's manifest weight challenge, our standard of review is stated as

follows: "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717. *See also, State v. Thompkins* (1997), 78 Ohio St.3d 380, 678 N.E.2d 541. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Martin* at 175, 485 N.E.2d 717.

**{¶35}** Appellant's brief does not present an extensive separately-developed claim as to manifest weight (*see* App.R. 16(A)(7)), but interwoven into his brief are the arguments that C.P. and L.W. each saw just two or three seconds of images which did not show actual oral sex, and that appellant's admissive statements to F.V. and R.S. were too imprecise and insubstantial to allow a proper inference of recorded sexual activity. He also challenges R.S.'s additional testimony as sincere, but inaccurate at several points. However, upon review of the record under the standard of *Martin,* we find the trial court did not clearly lose its way and create a manifest miscarriage of justice requiring that appellant's delinquency adjudication on Count 1 be reversed and a new trial ordered. We hold appellant's adjudication based on the offense of pandering sexually-oriented matter involving a minor was not against the manifest weight of the evidence.

**{¶36}** Appellant's First Assignment of Error is therefore overruled.

II.

**{¶37}** In his Second Assignment of Error, Appellant M.W. maintains his Count 2 adjudication (based on the offense of disseminating matter harmful to a juvenile) was not

supported by sufficient evidence and was against the manifest weight of the evidence. We agree in regard to appellant's sufficiency claim.

### Sufficiency of the Evidence

**{¶38}** Appellant herein was adjudicated delinquent under Count 2 by reason of violating R.C. 2907.31(A)(2), which states: "No person, with knowledge of its character or content, shall recklessly *** [d]irectly offer or agree to sell, deliver, furnish, disseminate, provide, exhibit, rent, or present to a juvenile, a group of juveniles, a law enforcement officer posing as a juvenile, or a group of law enforcement officers posing as juveniles any material or performance that is obscene *or* harmful to juveniles[.]" (Emphasis added).

**{¶39}** We have recognized that under R.C. 2907.31(A), "obscene" and "harmful to juveniles" are two different categories of material, the latter being subject to a lesser criminal penalty than the former. *See In re L.Z.*, 5th Dist. Licking No. 15-CA-36, 2016-Ohio-1337, 61 N.E.3d 776, ¶ 23.

### Obscenity Element[3]

**{¶40}** R.C. 2907.01(F) states as follows concerning obscenity:

When considered as a whole, and judged with reference to ordinary adults or, if it is designed for sexual deviates or other specially susceptible group, judged with reference to that group, any material or performance is 'obscene' if any of the following apply:

(1) Its dominant appeal is to prurient interest;

---

[3] Appellant posits that the trial court implicitly relied upon the obscenity element because the court ruled that the violation would have been a fifth-degree felony if committed by an adult and because the court committed appellant to DYS. *See* R.C. 2907.31(F); R.C. 2152.16.

(2) Its dominant tendency is to arouse lust by displaying or depicting sexual activity, masturbation, sexual excitement, or nudity in a way that tends to represent human beings as mere objects of sexual appetite;

(3) Its dominant tendency is to arouse lust by displaying or depicting bestiality or extreme or bizarre violence, cruelty, or brutality;

(4) Its dominant tendency is to appeal to scatological interest by displaying or depicting human bodily functions of elimination in a way that inspires disgust or revulsion in persons with ordinary sensibilities, without serving any genuine scientific, educational, sociological, moral, or artistic purpose;

(5) It contains a series of displays or descriptions of sexual activity, masturbation, sexual excitement, nudity, bestiality, extreme or bizarre violence, cruelty, or brutality, or human bodily functions of elimination, the cumulative effect of which is a dominant tendency to appeal to prurient or scatological interest, when the appeal to such an interest is primarily for its own sake or for commercial exploitation, rather than primarily for a genuine scientific, educational, sociological, moral, or artistic purpose.

**{¶41}** Obscenity is one of the recognized exceptions to the First Amendment's free speech guarantee. *See State v. Tooley*, 114 Ohio St.3d 366, 2007-Ohio-3698, 872 N.E.2d 894, ¶ 8. Questions concerning whether material is obscene "are essentially questions of fact." *City of Urbana ex rel. Newlin v. Downing,* 43 Ohio St.3d 109, 114 (1989).

**{¶42}** As an initial matter, we find R.C. 2907.01(F)(3), (4), and (5), *supra*, inapplicable to an analysis of the matter before us. We also emphasize that because the offense at issue is based on the acts "disseminating" material to other juveniles, the critical evidence is what C.P. and L.W. testified to actually seeing. The import of any admissions by appellant concerning the video is thus greatly diminished concerning this offense. Both C.P. and L.W. testified that appellant exhibited to them a "couple [of] seconds" of video, depicting an erect penis but no sexual activity, movement, or touching. *See* Tr. at 52, 53, 61, 66. We must thus consider, in light of what these two juveniles saw, the questions of whether the video clip's "dominant appeal [was] to prurient interest" and/or its "dominant tendency [was] to arouse lust by displaying or depicting sexual activity, masturbation, sexual excitement, or nudity in a way that tends to represent human beings as mere objects of sexual appetite." R.C. 2907.01(F)(1) and (2).

**{¶43}** "Prurient interest" is defined in Ohio as "not the same as a candid, normal or healthy interest in sex, rather it is a shameful or morbid interest in nudity, sex, or excretion * * * [which] goes substantially beyond limits of candor in description or representation of such matters * * *." *State v. Girard*, 9th Dist. Medina No. 02CA0057-M, 2003-Ohio-7178, f.n. 13, (Whitmore, J., dissenting), citing *City of Urbana ex rel. Newlin v. Downing* (1989), 43 Ohio St.3d 109, 116, 539 N.E.2d 140 (internal quotations and citations deleted). The record in the case *sub judice* demonstrates that appellant's dissemination of the video clip was part of a vengeful attempt either to demean F.V. or to insult C.H., or perhaps both. Therefore, as unacceptable and as damaging to F.V. as such actions were, we find appellant's momentary showing of an erect penis in frame with the face of this minor female, as identified by one witness, does not sufficiently demonstrate

beyond a reasonable doubt the existence of an appeal to the prurient interest of the two juvenile viewers or a tendency to arouse their lust under the circumstances of this case. As the Vermont Supreme Court has aptly summarized: "The [United States Supreme] Court has consistently recognized that a state's interest in regulating obscenity relates to protecting the sensibilities of those exposed to obscene works, as opposed to, for example, protecting the privacy or integrity of the models or actors depicted in obscene images." *State v. VanBuren*, 2018 VT 95, --- A.3d ---, 2018 WL 4177776, ¶ 24.

<u>*"Harmful to Juveniles" Element*</u>

**{¶44}** Appellant next contends the evidence does not prove beyond a reasonable doubt that appellant's exhibition of the video was "harmful to juveniles."

**{¶45}** R.C. 2907.01 (E) provides:

"Harmful to juveniles" means that quality of any material or performance describing or representing nudity, sexual conduct, sexual excitement, or sadomasochistic abuse in any form to which *all of the following* apply:

(1) The material or performance, *when considered as a whole,* appeals to the *prurient interest of juveniles in sex.*

(2) The material or performance is patently offensive to prevailing standards in the adult community as a whole with respect to what is suitable for juveniles.

(3) The material or performance, *when considered as a whole,* lacks serious literary, artistic, political, and scientific value for juveniles.

**{¶46}** (Emphasis added).

**{¶47}** Based on our previous analysis, to the extent that the trial court relied upon the "harmful to juveniles" element, we find insufficient evidence of an appeal to prurient interest under the circumstances presented.

**{¶48}** Accordingly, appellant's Second Assignment of Error is sustained.

III.

**{¶49}** In his Third Assignment of Error, Appellant M.W. maintains, assuming we have concluded that appellant's exhibition of the video to C.P. and L.W. was "harmful to juveniles" within the meaning of R.C. 2907.31(A)(2), that said statute is unconstitutionally vague and irrational as applied to the facts of this case.

**{¶50}** Appellant's Third Assignment of Error is found to be moot. *See* App.R. 12(A).

IV.

**{¶51}** In his Fourth Assignment of Error, Appellant M.W. argues the trial court's allowance of witness testimony concerning the contents of the video in question, without the presentation of the video itself, constituted plain error. We disagree.

**{¶52}** The admission or exclusion of relevant evidence rests in the sound discretion of the trial court. *State v. Sage* (1987), 31 Ohio St.3d 173, 180, 510 N.E.2d 343. As a general rule, all relevant evidence is admissible. Evid.R. 402; cf. Evid.R. 802. Our standard task is to look at the totality of the circumstances and determine whether the trial court acted unreasonably, arbitrarily or unconscionably in allowing or excluding the disputed evidence. *State v. Oman,* 5th Dist. Stark No. 1999CA00027, 2000 WL 222190.

**{¶53}** Evid.R. 1002 states as follows:

**{¶54}** "To prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided in these rules or by statute enacted by the General Assembly not in conflict with a rule of the Supreme Court of Ohio."

**{¶55}** The "best evidence rule" rests on the fact that an original writing is more reliable, complete, and accurate as to its contents and meaning. *State v. Jones*, 8th Dist. Cuyahoga No. 102318, 2015-Ohio-4694, ¶ 30, citing *United States v. Holton,* 116 F.3d 1536, 1545 (D.C.Circ.1997).

**{¶56}** Pursuant to Evid.R. 1001(2), the term "photographs" includes still photos, X-ray films, video tapes, and motion pictures.

**{¶57}** The pertinent potential exception to the best evidence rule in the present case, Evid.R. 1004(2), states that "[t]he original is not required, and other evidence of the contents of a writing, recording, or photograph is admissible if *** [n]o original can be obtained by any available judicial process or procedure[.]"

**{¶58}** In this instance, the State has taken the position in response that the video was unobtainable because appellant would not provide the password to the cell phone in question. During the trial, the State called Detective Wayne Moore of the Licking County Sheriff's Office. He testified that he had spoken to the law enforcement specialists who handle cell phone analysis and was informed that "anything iPhone I believe they said five or newer couldn't be accessed without a password at *** this point due to their software." Tr. at 97.

**{¶59}** Detective Moore testified toward the end of the trial; in the meantime, the State had relied on testimony about the video, rather than the video itself. In sum, F.V.

testified that appellant had once told her "[s]omething along the lines saying I [appellant] just sent my buddy this video of you giving me head." Tr. at 25-27. F.V. did not elaborate on the context of the statement of appellant. The record also reveals that C.P., who was shown the video in question for a couple of seconds until he looked away, testified that it showed a male and a female, but C.P. could not "positively identify" these persons. Tr. at 49. He indicated that he saw no female nudity in the video. Tr. at 50. He speculated that the female was F.V., also noting that the video had become a "hot topic." Tr. at 49, 54. But he summarized on re-direct examination what he had observed as "[i]t was more of her getting ready to suck [M.W.'s] erect penis." Tr. at 53. The other minor who looked at the video, L.W., was asked on direct to describe what he saw on the video, to which he replied: "Oral sex, I guess, is what --." Tr. at 60. L.W. then testified that he could tell the female was F.V. because he recognized her face. *Id.* But L. W. subsequently testified he saw no actual movement on the video.  Tr. at 66.

**{¶60}** In presenting the case that the State violated the best evidence rule by proceeding without the video itself, appellant's brief presents a well-researched review of the "foregone conclusion" exception to the privilege against self-incrimination under the Fifth Amendment. This doctrine in essence stands for the proposition that the act of production itself does not compel a defendant to be a witness against himself or herself. *See Commonwealth v. Gelfgatt*, 468 Mass. 512, 522–23, 11 N.E.3d 605, 614–15 (2014). Under this "foregone conclusion" doctrine, "the Fifth Amendment does not protect an act of production when any potentially testimonial component of the act of production—such as the existence, custody, and authenticity of evidence—is a 'foregone conclusion' that 'adds little or nothing to the sum total of the Government's information.' *** For the rule to

apply, the Government must be able to 'describe with reasonable particularity' the documents or evidence it seeks to compel." *United States v. Apple Mac Pro Computer,* 851 F.3d 238, 247 (3rd Cir. 2017) (internal citations omitted). Appellant maintains that by extension, the Fifth Amendment does not protect against compelled production of encrypted files on electronic devices when (1) the State possesses the device, (2) the State knows the device was possessed, accessed, or owned by the accused, and (3) the State is aware of the existence of the particular photo, video, or other file the State is seeking. It has thus been held that factual statements that would be conveyed by a defendant's act of entering an encryption key on a computer are "foregone conclusions" and, therefore, the act of decryption is not a testimonial communication that is protected by the Fifth Amendment. *Gelfgatt, supra.*

{¶61} A New Jersey appellate division court recently addressed this issue, concluding as follows under the facts of the case:

{¶62} "However, by producing the passcodes, [the] defendant is not implicitly conveying any information the State does not already possess. Defendant is not telling the government something it does not already know. Therefore, the implicit facts conveyed by the act of producing the passcodes is a 'foregone conclusion' and compelled disclosure of the passcodes does not violate defendant's Fifth Amendment right against self-incrimination."

{¶63} *State v. Andrews,* --- A.3d ---, 2018 WL 5985982 (Nov. 15, 2018), at 5.

{¶64} However, it is undisputed in the case *sub judice* that appellant did not raise any objections in reference to Evid.R. 1002 at the adjudication hearing. Defense counsel thus waived any objection to the State's failure to present the video. *See State v Jones,*

4th Dist. Highland No. 04-CA-9, 2005-Ohio-768, ¶ 26 . Furthermore, error not raised in the trial court must be plain error in order to reverse. *State v. Johnson,* 88 Ohio St.3d 95, 2000-Ohio-276*.* In *State v. Cooperrider* (1983), 4 Ohio St.3d 226, 448 N.E.2d 452, the Ohio Supreme Court reiterated that "* * * the plain error rule is to be applied with utmost caution and invoked only under exceptional circumstances, in order to prevent a manifest miscarriage of justice." *Id.* at 227, 448 N.E.2d 452. An appellant must at least show a deviation from a legal rule that constitutes an obvious defect in the trial proceedings. *See State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002).

**{¶65}** Upon review of the record, in light of *Apple Mac Pro Computer*, we find the State did not demonstrate the video in question would not have been "obtainable by any available judicial process or procedure" within the meaning of the 1004)((2) exception to Evid.R. 1002. The testimony concerning what was seen on the video arguably should have been barred by the best evidence rule, absent further action by the State to obtain the phone's password from appellant. However, because of the lack of established legal guidance in Ohio on this developing evidentiary issue, we do not conclude that the allowance of the witness testimony resulted in an "obvious defect" in the proceedings that affected the outcome of the adjudication, resulting in a manifest miscarriage of justice. Therefore, we cannot conclude plain error occurred in this instance.

**{¶66}** Appellant's Fourth Assignment of Error is overruled.

V.

**{¶67}** In his Fifth Assignment of Error, appellant contends he was deprived of his constitutional right to the effective assistance of trial counsel, based on his defense

attorney's failure to object under Evid.R. 1002 to witness testimony regarding the video contents. We disagree.

**{¶68}** Our standard of review for ineffective assistance claims is set forth in *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. Ohio adopted this standard in the case of *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373. These cases require a two-pronged analysis in reviewing a claim for ineffective assistance of counsel. First, we must determine whether counsel's assistance was ineffective*; i.e.,* whether counsel's performance fell below an objective standard of reasonable representation and was violative of any of his or her essential duties to the client. If we find ineffective assistance of counsel, we must then determine whether or not the defense was actually prejudiced by counsel's ineffectiveness such that the reliability of the outcome of the trial is suspect. This requires a showing that there is a reasonable probability that but for counsel's unprofessional error, the outcome of the trial would have been different. *Id.*

**{¶69}** However, trial counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. *State v. Sallie* (1998), 81 Ohio St.3d 673, 675, 693 N.E.2d 267. In addition, the United States Supreme Court and the Ohio Supreme Court have held that a reviewing court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. *See Bradley* at 143, 538 N.E.2d 373, quoting *Strickland* at 697, 104 S.Ct. 2052.

**{¶70}** Upon review, and in light of our conclusions in regard to appellant's Fourth Assignment of Error, *supra*, we find trial counsel's decision not to object under Evid.R.

1002 falls under reasonable trial strategy. Furthermore, because we are not privy to the contents of the actual video, assuming it still exists, appellant's argument relies on information dehors the record, and invites unwarranted speculation on our part in the present direct appeal. *See*, *e.g.*, *State v. Fornshell,* 5th Dist. Fairfield No. 10 CA 48, 2011-Ohio-3560, 2011 WL 2847508, ¶ 18*.*

**{¶71}** Appellant's Fifth Assignment of Error is overruled.

VI.

**{¶72}** In his Sixth Assignment of Error, Appellant M.W. contends he was denied, in the aggregate sense, the effective assistance of trial counsel. We disagree.

### *Failure to Object under Evid.R. 1002*

**{¶73}** Having previously addressed this issue, we find appellant was not deprived of the effective assistance of trial counsel in violation of his constitutional rights on this basis.

### *Failure to Raise Constitutional Claims*

**{¶74}** Because the constitutional vagueness issue presented by appellant *supra* was moot, we need not address it in the realm of ineffective assistance.

### *Defense Counsel's Performance During Closing Argument*

**{¶75}** Generally, "*** the manner and content of trial counsel's closing arguments are a matter of trial strategy and do not constitute ineffective assistance of counsel." *State v. Turks*, 3d Dist. Allen No. 1-08-44, 2009-Ohio-1837, ¶ 42. The record reveals defense counsel argued and highlighted discrepancies in witness testimony, and focused on the theory that these discrepancies created a reasonable doubt. Upon review, we find no basis for a claim of ineffective assistance on this issue.

*Defense Counsel's Performance During Dispositional Hearing*

**{¶76}** We note "Ohio has long recognized that juvenile proceedings are not criminal in nature and the juvenile system must focus on the child's welfare." *State v. Penrod* (1989), 62 Ohio App.3d 720, 722, 577 N.E.2d 424. Nonetheless, the order of disposition in a juvenile case is a matter within the court's discretion. *In re Stringer*, 5th Dist. Tuscarawas No. 2002 AP 10 0082, 2003-Ohio-2119, ¶ 58. Here, the trial court gave appellant the opportunity to speak and engaged him in a dialogue in its consideration of dispositional alternatives. We find no basis to conclude that counsel's actions fell below a reasonable professional standard.

**{¶77}** Having considered the foregoing claims, we hold appellant was not deprived of the effective assistance of trial counsel in violation of his rights under the Sixth and Fourteenth Amendments to the United States Constitution and Article I, §10 and §16 of the Ohio Constitution.

**{¶78}** Appellant's Sixth Assignment of Error is therefore overruled.

VII.

**{¶79}** In his Seventh Assignment of Error, Appellant M.W. contends his disposition by the trial court constituted an abuse of discretion.

**{¶80}** R.C. 2152.01(A) states: "The overriding purposes for dispositions under this chapter are to provide for the care, protection, and mental and physical development of children subject to this chapter, protect the public interest and safety, hold the offender accountable for the offender's actions, restore the victim, and rehabilitate the offender. These purposes shall be achieved by a system of graduated sanctions and services."

**{¶81}** Based on our previous conclusions as to the count of disseminating matter harmful to a juvenile, we find a review of the disposition at this juncture would be premature.

**{¶82}** Appellant's Seventh Assignment of Error is found to be premature.

**{¶83}** For the reasons stated in the foregoing, the decision of the Court of Common Pleas, Juvenile Division, Licking County, is hereby affirmed in part, reversed in part, and remanded for further dispositional proceedings in accordance with our opinion and the law.

By: Wise, P. J.

Gwin, J., and

Delaney, J., concur.

JWW/d 1203