[Cite as *State v. Ruggly*, **2022-Ohio-3730.**]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES: |
| | Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellee | Hon. John W. Wise, J. |
| | Hon. Craig R. Baldwin, J. |
| -vs- | |
| | Case No. 2022CA00065 |
| DAVID JUNIOR RUGGLY | |
| | |
| Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDINGS:      Appeal from the Stark County Court of
Common Pleas, Case No. 2021CR2747


JUDGMENT:      Affirmed

DATE OF JUDGMENT ENTRY:      October 18, 2022


APPEARANCES:


For Plaintiff-Appellee      For Defendant-Appellant

KYLE L. STONE      BERNARD L. HUNT
Prosecuting Attorney      2395 McGinty Road, N.W.
Stark County, Ohio      North Canton, Ohio 44720

VICKI L. DESANTIS
Assistant Prosecuting Attorney
Appellate Division
110 Central Plaza South – Suite #510
Canton, Ohio 44702-1413

*Hoffman, P.J.*

**{¶1}** Defendant-appellant David Junior Ruggly appeals the judgment entered by the Stark County Common Pleas Court convicting him of possession of a fentanyl-related compound (R.C. 2925.11(A)(C)(11)(c)) and aggravated possession of drugs (R.C. 2925.11(A)(C)(1)(b)), and sentencing him to an aggregate term of 36 months incarceration. Plaintiff-appellee is the state of Ohio.

### STATEMENT OF THE FACTS AND CASE

**{¶2}** On December 17, 2021, Cheryl Desmond was working as a supervisor at Community Restoration Center of Stark County (hereinafter "CRC"). CRC is a halfway house located in Canton, Ohio. Appellant was a resident of CRC.

**{¶3}** Desmond was making her rounds of the halfway house by closed-circuit television. The rooms all had a camera in them, and Desmond checked the rooms, restrooms, doors, hallways, kitchen, and perimeter. The camera in Appellant's room was located right above Appellant's bed. Desmond saw Appellant pull a plastic bag out of his pockets, hold it up in the air, shake it, and pour something from the bag onto a DVD player. Appellant then tore a piece of paper, poured the substance from the DVD player into the paper, rolled the paper up as if he was rolling a marijuana joint, and handed the rolled paper to the person in the bunk below Appellant. Appellant then reached back into his pocket and began going through his wallet.

**{¶4}** While watching the screen, Desmond called her supervisor and described what she was watching. Desmond's supervisor told her to call the police.

**{¶5}** Detective Trey Schilling of the Canton Police Department responded to the call. He went into Appellant's room, and asked Appellant to come down from his top bunk. As Appellant climbed down from the bunk, Det. Schilling saw Appellant toss

something from his hand onto the bed. Det. Schilling began searching through the bedding for the item Appellant had discarded. While doing so, a clear baggy fell down between the bed and the wall. The substance inside the baggy was tested and determined to be fentanyl and methamphetamine.

{¶6} While at CRC, Det. Schilling viewed video from the closed-circuit television of the purported drug transaction between Appellant and the other person in his room. Although Det. Schilling was wearing a body camera, it did not capture what he viewed on the closed-circuit television, nor was any video from the closed-circuit television produced by the State.

{¶7} Appellant was indicted by the Stark County Grand Jury with one count of possession of a fentanyl-related compound and one count of aggravated possession of drugs. The case proceeded to jury trial in the Stark County Common Pleas Court.

{¶8} Appellant filed a motion in limine seeking to exclude testimony of witnesses concerning what was on the video from the closed-circuit television, citing the best evidence rule. The trial court found a video recording was either lost or was never captured, and the State could present testimony concerning what Desmond and Det. Schilling observed on the video.

{¶9} About two hours after the jury began deliberating, the jury notified the trial court it was deadlocked. The trial court instructed the jurors it is their duty to decide the case, and asked the jurors to re-examine their positions in an attempt to reach a verdict. The jury resumed deliberations after lunch. At 1:15 p.m., the jury reported a question from Juror No. 212. The question noted Juror 207 has anxiety over a past attack, and the deliberations caused her anxiety to increase. Juror 207 indicated she did not feel

capable of coming to a decision, and requested an alternate take her place. During voir dire, Juror 207 indicated she was the victim of a robbery in which there was a gun placed to the back of her head, she was currently undergoing counseling for PTSD, and the person who attacked her was never identified.

{¶10} The trial court discussed the situation with counsel, who agreed to the trial court inquiring of the juror further regarding the cause of her anxiety. The trial court noted for the record the juror was visibly shaking, and at one point in the questioning her body went limp. The trial court asked both parties if they objected to bringing in the first alternate, and both the State and Appellant indicated they had no objection. Approximately half an hour after the alternate replaced Juror 207, the jury returned with a verdict of guilty on both charges. The trial court sentenced Appellant to 36 months incarceration on each count, to be served concurrently.

{¶11} It is from the April 22, 2022 judgment of conviction and sentence Appellant prosecutes his appeal, assigning as error:

I. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN FAILING TO CONDUCT AN INVESTIGATION INTO POTENTIAL JUROR MISCONDUCT.

II. THE TRIAL COURT ABUSED ITS DISCRETION IN PERMITTING TESTIMONY REGARDING THE CLOSED CIRCUIT TV VIDEO.

III. APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

I.

{¶12}  In his first assignment of error, Appellant argues the trial court erred in failing to conduct an investigation into potential juror misconduct at the time it excused Juror 207 and replaced her with an alternate.   Appellant argues because the previously-deadlocked jury reached a decision approximately thirty minutes after the alternate replaced Juror 207, the trial court should have conducted an investigation into whether Juror 207 was intimidated or pressured into returning a guilty verdict during deliberations.

{¶13} At the time the court questioned the juror and ultimately replaced her, Appellant did not object to the manner in which the trial court handled the matter, and in fact acquiesced in excusing the juror.   However, after the jury's verdict was read, Appellant asked to have placed on the record the jury returned "rather quick" with a verdict after the alternate was replaced. Tr. 187.

{¶14} A defendant's failure to raise a claim of juror misconduct until after trial, when the issue of potential misconduct was known by the defendant during trial, amounts to a waiver of the claim. *State v. Mills*, 9th Dist. Summit No. 21751, 2004-Ohio-1750, ¶ 4. Although Appellant was not aware until after the verdict was rendered of the speed at which the jury would reach a decision after the alternate stepped in, Appellant was aware the jury had been deadlocked prior to the questioning of Juror 207, and also was aware Juror 207 stated she did not feel capable of coming to a decision on the case.  We find the potential misconduct was known by Appellant at the time Juror 207 was questioned, and his failure to object or request further investigation into whether Juror 207 was being pressured in the jury room to reach a guilty verdict constitutes a waiver of the issue.  We therefore must find plain error in order to reverse.

**{¶15}** The Ohio Supreme Court has set forth the following standard of our review of plain error:

Crim.R. 52(B) affords appellate courts discretion to correct "[p]lain errors or defects affecting substantial rights" notwithstanding an accused's failure to meet his obligation to bring those errors to the attention of the trial court. However, the accused bears the burden to demonstrate plain error on the record, *State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, ¶ 16, and must show "an error, i.e., a deviation from a legal rule" that constitutes "an 'obvious' defect in the trial proceedings," *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002).

Even if the error is obvious, it must have affected substantial rights, and "[w]e have interpreted this aspect of the rule to mean that the trial court's error must have affected the outcome of the trial." *Id*. We recently clarified in *State v. Rogers,* 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, that the accused is "required to demonstrate a reasonable probability that the error resulted in prejudice—the same deferential standard for reviewing ineffective assistance of counsel claims." (Emphasis sic.) *Id*. at ¶ 22, *citing United States v. Dominguez Benitez*, 542 U.S. 74, 81–83, 124 S.Ct. 2333, 159 L.Ed.2d 157 (2004).

If the accused shows that the trial court committed plain error affecting the outcome of the proceeding, an appellate court is not required to correct it; we have "admonish[ed] courts to notice plain error 'with the

utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.' " (Emphasis added.) *Barnes* at 27, 759 N.E.2d 1240, *quoting State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

{¶16} *State v. Thomas*, 152 Ohio St. 3d 15, 92 N.E.3d 821, 2017-Ohio-8011, ¶¶ 32-34.

{¶17} The analysis of a case involving alleged juror misconduct requires a two-tier inquiry. First, it must be determined whether there was juror misconduct. Second, if juror misconduct is found, it must then be determined whether the misconduct materially affected Appellant's substantial rights. *State v. Meeks*, 5th Dist. Stark No. 2014CA00017, 2015-Ohio-1527, 34 N.E.3d 382, ¶ 115.

{¶18} We find Appellant's claim of jury misconduct which led to the intimidation and ultimate removal of Juror 207 is speculative at best. During voir dire, Juror 207 disclosed she had been robbed at gunpoint, and was in counseling for PTSD as a result. The note sent to the judge from Juror 212 stated Juror 207 was experiencing anxiety and did not feel she could reach a decision. When questioned, the trial court noted on the record the juror was visibly shaking and at one point went limp on the stand. While the record does indicate Juror 207 had difficulty reaching a verdict, the record does not suggest she was a "hold-out" juror, or was being pressured by other jurors to reach a guilty verdict. The juror had a pre-existing condition as a result of a criminal attack. The record supports the trial court's finding the juror was experiencing a medical issue as a result of anxiety, and Appellant's claim further questioning of this juror would have led to

a discovery of jury misconduct is speculative.  We find Appellant has not demonstrated a reasonable probability of a change in the outcome had the trial court inquired further into the cause of Juror 207's anxiety.

**{¶19}**  The first assignment of error is overruled.

II.

**{¶20}**  In his second assignment of error, Appellant argues testimony concerning what witnesses observed on the video from CRC should have been excluded as violative of the best evidence rule.  Although not separately assigned as error as required by App. R. 16(A)(7), he also argues the police body camera footage did not capture the closed-circuit television video, police did not follow their own policy for preserving video evidence, and the failure to preserve the video constituted bad faith.

**{¶21}**  "[A] trial court is vested with broad discretion in determining the admissibility of evidence in any particular case, so long as such discretion is exercised in line with the rules of procedure and evidence."  *Rigby v. Lake Cty.,* 58 Ohio St. 3d 269, 271, 569 N.E.2d 1056 (1991).

**{¶22}**  Evid. R. 1002, Ohio's "best evidence" rule, provides, "To prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided in these rules or by statute enacted by the General Assembly not in conflict with a rule of the Supreme Court of Ohio."

**{¶23}**  We find Desmond's testimony regarding what she observed on closed-circuit television does not implicate the best evidence rule.  Her testimony was not provided to prove the content of a video, but rather was testimony concerning what she observed live and first-hand, via use of a closed-circuit television monitor.  Likewise, Det.

Schilling's testimony was not offered to prove the content of a recording, but rather was testimony of what he actually observed on the television monitor, separate and apart from whether a video was made or preserved.

**{¶24}** Appellant also argues the body camera "capture" of what Det. Schilling observed on the closed-circuit television would have been an admissible duplicate of the video. However, there is nothing in the record to demonstrate why this portion of the body camera video was missing, or whether body camera video of Det. Schilling watching the closed-circuit television ever existed. We find the trial court did not err in finding the best evidence rule was not implicated by Det. Schilling's testimony of his personal observations of the closed-circuit television.

**{¶25}** Appellant also argues bad faith by Det. Schilling and the State in failing to preserve video from the closed-circuit television. We note Appellant did not file a request for discovery in the instant case, nor did he file a motion to preserve the video. In addition, the record does not affirmatively demonstrate the existence of a video in the instant case.

**{¶26}** Further, assuming arguendo a video existed and was destroyed by the State, the burden remains on Appellant to demonstrate the exculpatory nature of the destroyed evidence. *State v. Sharma,* 5th Dist. Delaware No. 20CA110047, 2021-Ohio-3436, ¶30. We find nothing in the record before this Court demonstrates if a video was preserved of the closed-circuit television, the video was exculpatory in nature.

**{¶27}** The second assignment of error is overruled.

III.

**{¶28}** In his third assignment of error, Appellant argues his conviction was against the manifest weight of the evidence. He specifically argues the testimony of Desmond

and Det. Schilling was contradictory regarding whether Det. Schilling viewed a video of Appellant's actions with the baggy, as observed by Desmond on closed-circuit television. He also argues the body camera video does not show Appellant tossing a baggy on the bed, nor does it show the baggy dropping to the lower bunk, as testified to by Det. Schilling.

**{¶29}** In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a thirteenth juror and "in reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in evidence the jury 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins*, 78 Ohio St. 3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541, *quoting State v. Martin*, 20 Ohio App. 3d 172, 175, 485 N.E.2d 717 (1983).

**{¶30}** Appellant was convicted of possession of a fentanyl-related compound and aggravated possession of drugs in violation of R.C. 2925.11(A)(C)(1)(b) and R.C. 2925.11(A)(C)(11)(c):

> (A) No person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog.
>
> (C) Whoever violates division (A) of this section is guilty of one of the following:
>
> (1) If the drug involved in the violation is a compound, mixture, preparation, or substance included in schedule I or II, with the exception of marihuana, cocaine, L.S.D., heroin, any fentanyl-related compound,

hashish, and any controlled substance analog, whoever violates division (A) of this section is guilty of aggravated possession of drugs. The penalty for the offense shall be determined as follows:

(b) If the amount of the drug involved equals or exceeds the bulk amount but is less than five times the bulk amount, aggravated possession of drugs is a felony of the third degree, and there is a presumption for a prison term for the offense.

(11) If the drug involved in the violation is a fentanyl-related compound and neither division (C)(9)(a) nor division (C)(10)(a) of this section applies to the drug involved, or is a compound, mixture, preparation, or substance that contains a fentanyl-related compound or is a combination of a fentanyl-related compound and any other controlled substance and neither division (C)(9)(a) nor division (C)(10)(a) of this section applies to the drug involved, whoever violates division (A) of this section is guilty of possession of a fentanyl-related compound. The penalty for the offense shall be determined as follows:

(c) If the amount of the drug involved equals or exceeds fifty unit doses but is less than one hundred unit doses or equals or exceeds five grams but is less than ten grams, possession of a fentanyl-related compound is a felony of the third degree, and there is a presumption for a prison term for the offense.

**{¶31}** Appellant argues the testimony of the witnesses conflicted on whether Desmond showed Det. Schilling the video footage from the closed-circuit camera when he arrived at CRC. Det. Schilling testified he observed the footage. Desmond initially testified she did not show police video of the footage; however, she later testified she did show the officer the video, because she remembered pointing out the residue of what appeared to be drugs on the DVD player in Appellant's room. However, we find this conflicting testimony is not material to any element of the offense, and the jury did not lose its way in finding Appellant guilty despite Desmond's difficulty recalling whether she showed police the video.

**{¶32}** Appellant also argues Det. Schilling's body camera footage did not show Appellant tossing a baggy on the top bunk, nor does it show the baggy falling to the bottom bunk where it was ultimately recovered by Det. Schilling. He argues the jury therefore lost its way in believing Det. Schilling's testimony regarding Appellant's possession of the baggy.

**{¶33}** While the video of Det. Schilling's body camera was shown to the jury, Det. Schilling explained the inability to see the baggy fall was caused by his height in comparison to the height of the bed, and the fact he is leaning over searching for the baggy, causing the video to be shot facing down. Tr. 106-107. However, he identified the point in the video where he said, "There it is" as being the point where he saw the baggy fall. Tr. 107. Det. Schilling also noted although the jury could not see Appellant tossing the baggy on the body camera footage, Appellant's entire body is not visible on the footage, and further Det. Schilling is heard asking Appellant what he has tossed as the detective approached. Tr. 115. We find the jury did not lose its way in believing the

testimony of Det. Schilling despite the fact the events he testified to were not fully captured on the body camera footage.

{¶34} The third assignment of error is overruled.  The judgment of the Stark County Common Pleas Court is affirmed.


By: Hoffman, P.J.

Wise, John, J.  and

Baldwin, J. concur


_____

HON. WILLIAM B. HOFFMAN

_____

HON. JOHN W. WISE

_____

HON. CRAIG R. BALDWIN