[Cite as *State v. Leray*, 2024-Ohio-2206.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | : | Hon. John W. Wise, J. |
| | : | Hon. Andrew J. King, J. |
| -vs- | : | |
| | : | |
| KENNY LERAY, SR. | : | Case No. 2023 CA 00144 |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:      Appeal from the Court of Common Pleas, Case No. 2023 CR 1552


JUDGMENT:      Affirmed


DATE OF JUDGMENT:      June 7, 2024


APPEARANCES:

For Plaintiff-Appellee

KYLE L. STONE
PROSECUTING ATTORNEY

  By: VICKI L. DESANTIS
110 Central Plaza South, Suite 510

For Defendant-Appellant

BERNARD L. HUNT
2395 McGinty Road NW
North Canton, OH 44720

Canton, OH  44702-1413
*King, J.*

{¶ 1}  Defendant-Appellant Kenney Leray, Sr. appeals the October 6, 2023 judgment of conviction and sentence of the Stark County Court of Common Pleas. Plaintiff-Appellee is the state of Ohio. We affirm the trial court.

FACTS AND PROCEDURAL HISTORY

{¶ 2}  S.B. owns a property in Stark County that has been in S.B.'s family since the 1960's. He does not live there, but rather he lets his sister J.H. and her six grandchildren live there. There are two outbuildings on the property, a garage and a barn. The garage contained decades worth of the family's belongings including S.B.'s gun safe. The gun safe contained four firearms and ammunition.

{¶ 3}  In the summer of 2023, Leray found himself homeless and in need of a place to store his belongings. J.H. was acquainted with Leray as her son had worked with him in the past. J.H. struck a storage agreement with Leray. Leray was to clean out the barn and put his belongings in the barn. In exchange for storage fees, Leray was to perform landscaping and mowing on the property.

{¶ 4}  On July 5, 2023, J.H called S.B. to tell him the wire guarding a window on the garage had been forced through, the door was unlocked, and his gun safe was missing. J.H. also called the sheriff's department.

{¶ 5}  Deputy David Denson responded and spoke with J.H. who indicated there were surveillance cameras on the property. The day after J.H. called to report the matter, Denson returned to view the footage from the camera pointed at the garage. The video showed Leray arriving on July 5, 2023 in his red pickup truck loaded with scrap metal at approximately 4:30 a.m. He walked around the garage a lot, and then left at 8:53 a.m.

Denson observed a gap or glitch in the video from 5:55 to 6:08 a.m. Before the gap the garage door was closed, and after, it was open. The video further showed J.H. outside and walking towards Leray and his truck at 6:53 a.m. Denson attempted to capture the video with his body-worn camera but the screen was mounted too high and he only captured audio.

{¶ 6}   J.H. told Denson the last time she recalled seeing the safe was June 25, 2023. She reported Leray was on and off the property between June 25 and July 5.

{¶ 7}   Within 48 hours of the report to the sheriff's department, S.B. discovered Leray was staying with his daughter and relayed that information and location to the sheriff's department. Denson drove by the daughter's residence and saw the same red truck parked in the driveway, still loaded with scrap metal. Denson requested backup before entering the property where he spoke with Leray's daughter. He observed the gun safe in plain view on the ground in front of the truck with trash stacked on top. The daughter stated she had not seen Leray all day, but as they spoke, deputies heard movement from underneath a camper parked next to Leray's truck. The deputies ordered whoever was under the camper to come out and Leray emerged. He was provided his Miranda warnings and taken into custody.

{¶ 8}   To confirm the correct safe had been located, Deputy Denson successfully used the combination provided by S.B. to open the safe. The firearms and ammunition were undisturbed. Upon questioning, Leray first told Denson he knew nothing about a safe and he did not know there were guns inside. Then he said he took the safe to protect his property because people kept stealing his things. He then changed his story again and told Denson J.H. had left the safe out for him to pick up. He stated he wanted to scrap

the safe because it was heavy and he knew he would good money out of it. Leray said J.H. was allowing him to steal S.B.'s things and sell them because she needed money too. He claimed, however, he would take the blame and plead guilty. Denson asked Leray how he got the safe into the truck and Leray stated he did it himself by tipping it into the truck bed.

{¶ 9}   On September 7, 2023, the Stark County Grand Jury returned an indictment charging Leray with four counts of theft of a firearm, felonies of the third degree, and one count of breaking and entering, a felony of the fifth degree. Leray pled not guilty to the charges and requested a jury trial.

{¶ 10} A two-day jury trial began on September 26, 2023. In its case-in-chief, the state called S.B. and Deputy Denson. During Denson's testimony, the state began asking the Deputy to discuss what he saw on the surveillance camera video. Counsel for Leray objected because the state had not provided the defense with the video. The state explained that the video was not provided to the state and either no longer exists or the sheriff's department cannot find it. The trial court asked Deputy Denson if the video was available and Denson was not certain. The trial court recessed and ordered the state to find the video.

{¶ 11} Counsel for the state later returned to the trial court and indicated that the surveillance video did exist, but could not be played because it had been burned incorrectly. Deputy Denson then described for the trial court what he saw on the video, including the glitch in the video from 5:55 a.m. to 6:08 a.m. Counsel for Leray stated the safe was so heavy that Leray could not have put it in the truck by himself. The theory for the defense was that J.H. helped Leray put the safe into the truck, presumably during the

13-minute gap in the video and further, that J.H. altered the surveillance video. T. 130. There was no discussion about Denson's body camera.

{¶ 12} The trial court ruled that Deputy Denson could testify as to what he observed on the video. The trial court further instructed the jury that the video was unavailable and there was a 13-minute gap in the video and the defense believed that whatever occurred during that gap was exculpatory. The trial court additionally instructed that the defense would be free to explore that issue.

{¶ 13} Leray presented testimony from two witnesses, Deputy Josh Stansberry and J.H. J.H. testified Leray was not authorized to enter or remove any items from the garage, only the barn. She further testified that Leray used steel rollers to load heavy items onto his truck. J.H. stated she had told Leray on July 1, 2023 that he was no longer permitted on the property because she did not like how things were going.

{¶ 14} After hearing the evidence and deliberating, the jury found Leray guilty as charged. He was subsequently sentenced to an aggregate total of 18 months incarceration.

{¶ 15} Leray filed an appeal and the matter is now before this court for consideration. He raises four assignments of error as follow:

I

{¶ 16} "THE TRIAL COURT ABUSED ITS DISCRETION IN PERMITTING TESTIMONY REGARDING SURVEILLANCE FOOTAGE."

II

{¶ 17} "APPELLANT'S DUE PROCESS RIGHTS WERE VIOLATED WHEN THE STATE FAILED TO PRESERVE VIDEO EVIDENCE FROM THE SURVEILLANCE

FOOTAGE OF THE CRIME SCENE, WHEN SAID VIDEO EVIDENCE CONSTITUTED "BRADY" MATERIAL OR EXCULPATORY EVIDENCE."

III

{¶ 18} "APPELLANT'S DUE PROCESS RIGHTS WERE VIOLATED BECAUSE HIS CONVICTIONS WERE NOT BASED ON LEGALLY SUFFICIENT EVIDENCE AS THE STATE DID NOT PROVE ESSENTIAL ELEMENTS OF THEFT AND BREAKING AND ENTERING."

IV

{¶ 19} "APPELLANT'S CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

I

{¶ 20} In his first assignment of error, Leray makes two arguments. He first argues the trial court abused its discretion in permitting Deputy Denson to testify as to the content of the surveillance video as the video were unavailable due to bad faith on the part of the state. He also argues permitting the Deputy to do so was a violation of the best evidence rule. We disagree.

## Failure to Object

{¶ 21} As an initial matter, in Leray's best evidence argument he states objected to Denson testifying as to the content of the video and therefore an abuse of discretion standard should apply. But counsel for Leray never advanced a best evidence argument in the trial court. Rather, while counsel did object to Denson testifying as to the contents of the missing video, counsel alleged the state had committed a *Brady* violation.

Transcript of trial, (T.) 312-313. Counsel for Leray also never raised a bad faith argument. Because Leray never raised these matters below, he has forfeited all but plain error.

{¶ 22} Leray has failed, however, to raise or argue plain error. Additionally, he makes three different arguments under this assignment of error requiring three different standards of review. Per the Appellate Rules, we could decline to address this assignment of error for failure to assign each error separately. App.R. 16(A)(7), App.R. 12(A)(2). In the interest of justice, however, we elect to do so.

### Plain Error

{¶ 23} An error not raised in the trial court must be plain error for an appellate court to reverse. *State v. Long*, 53 Ohio St.2d 91 (1978) at paragraph one of the syllabus; Crim.R. 52(B). In order to prevail under a plain error analysis, appellant bears the burden of demonstrating that the outcome of the trial clearly would have been different but for the error. *Id.* at paragraph two of the syllabus. Notice of plain error "is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *Id.* at paragraph three of the syllabus.

### Best Evidence Rule

{¶ 24} Ohio's "best evidence" rule is set forth in Evid. R. 1002. That rule provides, "[t]o prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided in these rules or by statute enacted by the General Assembly not in conflict with a rule of the Supreme Court of Ohio."

{¶ 25} Here, the best evidence rule simply does not apply to either the surveillance video or Deputy Denson's body camera video as the state was not attempting to prove

the content of the recordings. Rather, Denson's testimony pertained to what he observed during the course of his investigation, including watching footage from the surveillance cameras at the scene. Leray was the sole suspect, even without the camera footage. Leray confessed to stealing the safe. No one disputed that Leray had access to and was present on S.B.'s property in June and July 2023. The video and body camera footage were therefore unnecessary to prove that fact. See *State v. Ruggly*, 5th Dist. Stark No. 2022CA00065, 2022-Ohio-3730 ¶22-24.

{¶ 26} While Leray relies on our decision in *Matter of M.W*, 5th Dist. Licking No. 2018 CA 0021, 2018-Ohio-5227, that matter is wholly distinguishable from the present matter. *M.W*. involved one count of pandering sexually-oriented matter involving a minor, and one count of disseminating matter harmful to a juvenile. The sexually oriented matter was recorded and stored on a cell phone, and then shown to other juveniles. In order to prove the complaints, the state was required to prove the video contained a minor participating or engaging in sexual activity. In other words, to prove the content of the video. No so here. Accordingly, we find no error plain or otherwise.

Admission of Deputy Denson's Testimony

{¶ 27} Leray next argues the trial court abused its discretion by permitting Deputy Denson to testify as to the content of the videos because they were not available for trial. We disagree.

{¶ 28} The admission or exclusion of evidence lies in a trial court's sound discretion "so long as such discretion is exercised in line with the rules of procedure and evidence." *Rigby v. Lake County,* 58 Ohio St.3d 269, 271, 569 N.E.2d 1056 (1991); *State v. Sage,* 31 Ohio St.3d 173, 510 N.E.2d 343 (1987). "Abuse of discretion" means an attitude that

is unreasonable, arbitrary or unconscionable. *Huffman v. Hair Surgeon, Inc.*, 19 Ohio St.3d 83, 87, 482 N.E.2d 1248 (1985). Most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary. *AAAA Ent., Inc. v. River Place Community Urban Redev. Corp.,* 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990). An unreasonable decision is one backed by no sound reasoning process which would support that decision. *Id.* "It is not enough that the reviewing court, were it deciding the issue de novo, would not have found that reasoning process to be persuasive, perhaps in view of countervailing reasoning processes that would support a contrary result." *Id.*

{¶ 29} For the same reasons contained in our best evidence discussion, we find the trial court did not abuse its discretion by permitting Deputy Denson to testify regarding the content of the videos. A law enforcement officer may certainly testify as to the steps he or she took in the investigation of a crime, and Leray does not argue otherwise. Denson's testimony pertained to those steps and what he observed in the process.

Bad Faith

{¶ 30} As was true of Leray's best evidence argument, he also never raised or developed a bad faith argument below. Further, he never filed a motion to preserve evidence.

{¶ 31} In *Arizona v. Youngblood*, 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281(1988) the United States Supreme Court addressed the issue of whether a criminal defendant is denied due process of law by the State's failure to preserve evidence. In that matter the Court announced two tests: one that applies when the evidence is "materially exculpatory" and one when the evidence is "potentially useful." If the State fails to

preserve evidence that is materially exculpatory, the defendant's rights have been violated. If, on the other hand, the State fails to preserve evidence that is potentially useful, the defendant's rights have been violated only upon a showing of bad faith.

{¶ 32} The burden is on Leray to show the exculpatory nature of the allegedly destroyed evidence. *State v. Sharma*, 5th Dist. Delaware No. 20CAC110047, 2021-Ohio-3436 ¶30. To be materially exculpatory, evidence must at least possess an exculpatory value that was apparent before the evidence was destroyed. *Id.*

{¶ 33} Leray was not clear at trial, nor is he clear here as to why he believes the surveillance video is exculpatory. He appears to speculate that the 13-minute glitch in the video demonstrates J.H. was involved in the theft. But even if that were true, it does nothing to exonerate Leray. First, any charges against J.H. would be a separate matter. Second, Leray was discovered hiding under a camper on his daughter's property and next to the stolen safe. He admitted to Deputy Denson that he stole the safe. Thus, even if the video had shown involvement by J.H., Leray could still not show it was materially exculpatory, nor even potentially useful. We therefore reject Leray's bad faith argument.

{¶ 34} Having found no error, the first assignment of error is overruled.

II

{¶ 35} In his second assignment of error, Leray argues his right to due process was violated when the state failed to preserve the surveillance video from the scene when the video was exculpatory *Brady* material. We disagree.

{¶ 36} Under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the state violates a defendant's right to due process if it withholds evidence that is favorable to the defense and material to the defendant's guilt or punishment. *Matter of*

*P.K.,* 5th Dist. Guernsey No. 19 CA 08, 2019-Ohio-2311, 2019 WL 2451050, ¶ 11 citing *Brady,* 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215. The United States Supreme Court has explained, "evidence is 'material' within the meaning of *Brady* when there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different." *Cone v. Bell,* 556 U.S. 449, 469-470, 129 S.Ct. 1769, 173 L.Ed.2d 701 (2009).

{¶ 37} The rule announced in *Brady* applies to post-trial discovery of information that was known to the state but unknown to the defense. *United States v. Agurs*, 427 U.S. 97, 103, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). In *State v. Wickline*, 50 Ohio St.3d 114, 552 N.E.2d 913 (1990), the Supreme Court of Ohio rejected a claim that the state's failure to provide exculpatory information to the defendant before trial was a reversible *Brady* violation because the alleged exculpatory records were presented during trial. Therefore, no *Brady* violation occurred. *Id.* at 116.

{¶ 38} Crim.R. 16 governs discovery. Crim.R. 16(L) states:

> The trial court may make orders regulating discovery not inconsistent with this rule. If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or with an order issued pursuant to this rule, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may make such other order as it deems just under the circumstances.

{¶ 39} As to Leray's preservation argument, as discussed above the *Youngblood* Court established two tests, one that applies when the evidence is "materially exculpatory" and one that applies when the evidence is "potentially useful." If the state fails to preserve evidence that is materially exculpatory, the defendant's rights have been violated. Evidence is only material if there is a reasonable probability that had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine the confidence in the outcome. *State v. Johnston*, 39 Ohio St .3d 48, 529 N.E.2d 898 (1988) paragraph five of the syllabus.

{¶ 40} First, the evidence at issue was discovered during trial, not after. Therefore, no *Brady* violation exists. *State v. Hanna*, 95 Ohio St.3d 285, 2002-Ohio-2221, 767 N.E.2d 678, ¶ 82.

{¶ 41} Next, as previously discussed, the evidence here was not materially exculpatory as we see no reasonable probability that the outcome would have been different. The trial court handled the matter as it saw just, giving counsel for Leray free rein to explore its theory that J.H. had something to do with the theft of the gun safe. T. 131, 136-139. Again, even if we were to assume J.H. did have something to do with the theft, that fact would in no way exculpate Leray as the evidence against him was overwhelming, and any charges against J.H. would be a separate matter. The evidence demonstrated that a window in the garage was breached by someone who pushed in the wire which was secured around the interior of the window frame. T. 95, 218. Before the glitch in the video, the man door to the garage was closed. After the glitch the door was

cracked open. T. 142. After J.H. reported the safe missing, Leray was tracked down to his daughter's residence where he was discovered hiding underneath a camper next to his truck and the stolen safe. T.145-147. Leray admitted to Deputy Denson that he had stolen the safe. T. 153.

{¶ 42} Because there is no reasonable probability that the outcome in this matter would have been different, we reject Leray's *Brady* and preservation arguments. The second assignment of error is overruled.

### III, IV

{¶ 43} Because they are interrelated, we elect to address Leray's third and fourth assignments of error together. In these assignments of error, Leray argues his convictions are against the sufficiency and manifest weight of the evidence. Specifically, he argues there was no evidence presented to prove he acted with purpose to deprive C.B. of firearms, and no evidence to prove he trespassed into an unoccupied structure. We disagree.

### Standard of Review

{¶ 44} On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction. *State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492 (1991). "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Jenks* at paragraph two of the syllabus, following *Jackson v. Virginia,* 443 U.S. 307, 99

S.Ct. 2781, 61 L.Ed.2d 560 (1979). On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). See also, *State v. Thompkins,* 78 Ohio St.3d 380, 678 N.E.2d 541 (1997). The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Martin* at 175.

### The Charges and Evidence

{¶ 45} Leray was charged with theft of a firearm pursuant to R.C. 2913.02(A)(1)(B)(4) which provides in relevant part:

> (A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:
>
> (1) Without the consent of the owner or person authorized to give consent
>
> * * *
>
> (B)(4) If the property stolen is a firearm or dangerous ordnance, a violation of this section is grand theft. Except as otherwise provided in this division, grand theft when the property stolen is a firearm or

dangerous ordnance is a felony of the third degree, and there is a presumption in favor of the court imposing a prison term for the offense.

{¶ 46} Leray argues the state failed to produce any evidence to demonstrate that he knew there were guns in the safe. However, Deputy Denson testified that upon arrest, Leray told deputies he stole the safe because people were stealing his things and he needed to protect his property. T. 146. From this statement alone the jury could infer Leray did not intend to protect is property with the safe, but rather with the contents of the safe. This testimony was therefore sufficient to prove Leray's knowledge of the contents of the safe.

{¶ 47} Leray next argues the state did not produce sufficient evidence to support his conviction for breaking and entering. Leray was charged with breaking and entering pursuant to R.C. 2911.19(A) which provides that "[n]o person by force, stealth, or deception, shall trespass in an unoccupied structure, with purpose therein to commit any theft offense, as defined in section 2913.01 of the Revised Code, or any felony.

{¶ 48} Leray argues the state failed to produce sufficient evidence to prove he trespassed into an unoccupied structure. However, C.B. testified a window in the garage was kicked in. T. 95. Deputy Denson observed that the wire covering the window was peeled back leaving enough room for Leray to pass through. T. 159, 163. Leray's own witness, J.H. also testified that the wire was pushed in and a cabinet inside the garage moved. T. 218, 222-223. She also testified Leray was not to touch anything in the garage, only the barn which he was supposed to clean out. T. 241. She testified that contrary to

what Leray told deputies upon arrest, she did not put the safe outside for Leray to pick up. T. 242.

{¶ 49} While the evidence of Leray's trespass into the garage was circumstantial, it is axiomatic that circumstantial evidence carries the same weight as direct evidence. We find the state produced sufficient evidence to support Leray's conviction for breaking and entering.

{¶ 50} Finally, upon examination of the entire record, we find the jury did not lose its way in making its credibility determinations or in resolving any conflicts in evidence. This is not an exceptional case wherein the evidence weighs heavily against a conviction. Rather, as noted above, we find the evidence against Leray was overwhelming. Leray's convictions are therefore not against the manifest weight of the evidence.

{¶ 51} The third and fourth assignments of error are overruled.

{¶ 52} The judgment of the Stark County Court of Common Pleas is affirmed.

By King, J.,

Gwin, P.J. and

Wise, J. concur.